In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3582

HUSNI MOH'D ALI EL-GAZAWY,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

On Petition for Review of a Final Order of
the Board of Immigration Appeals.
A099 025 945

ARGUED JUNE 1, 2012—DECIDED AUGUST 16, 2012

Before FLAUM, ROVNER and WILLIAMS, *Circuit Judges*.

ROVNER, *Circuit Judge*.   Husni Moh'd Ali El-Gazawy
petitions for review of a decision of the Board of Immi-
gration Appeals ("BIA" or "Board"). As is often the
case in immigration matters, El-Gazawy's path to this
court is a long and winding road. After straightening
out the twists and turns, we conclude that the petition
must be denied.

**I.**

El-Gazawy is a native and citizen of Jordan who entered the United States in June 1990 as a non-immigrant visitor. He overstayed his visa and then failed to appear for special registration by April 25, 2003, as required by the National Security Entry-Exit Registration System ("NSEERS") program. On August 10, 2006, the Department of Homeland Security ("DHS") served El-Gazawy with a Notice to Appear, alleging that he was removable from the United States because (1) he overstayed his visa, in violation of 8 U.S.C. §§ 1227(a)(1)(B); and (2) he failed to comply with the NSEERS requirements, in violation of 8 U.S.C. §§ 1227(a)(3)(A) and 1305, and 8 C.F.R. § 264.1(f)(4). At his first hearing before an Immigration Judge ("IJ") on October 26, 2006, El-Gazawy was represented by a lawyer named Omar Abuzir. In order to allow the recently retained attorney to prepare, the case was continued to April 26, 2007. At that hearing, El-Gazawy, through his lawyer, admitted to the charges alleged in the Notice to Appear and conceded removability. He also informed the IJ that he would be seeking relief in the form of cancellation of removal for non-permanent residents under 8 U.S.C. § 1229b(b), and, in the alternative, voluntary departure under 8 U.S.C. § 1229c. The IJ allowed ninety days for El-Gazawy to file the necessary paperwork for cancellation of removal and voluntary departure, setting July 25, 2007 as the deadline. The IJ then set a hearing date of April 30, 2008, and advised El-Gazawy that the consequences of failing to file his fingerprints in a timely fashion could result in denial of the requested relief.

On July 28, 2008, El-Gazawy, still represented by Abuzir, appeared before a new IJ and requested a hearing date. The record does not explain why the original schedule was abandoned,[1] but the IJ set a new hearing date of October 9, 2009, with a "call up date" two weeks before that, on September 22, 2009, the last date to file all relevant documents. That schedule allowed El-Gazawy approximately fourteen months to complete and file the necessary paperwork. The IJ asked counsel if he would assist his client in obtaining and filing fingerprints in the next 120 days, by November 25, 2008. Counsel assented and the IJ warned counsel and El-Gazawy that the failure to file the fingerprints timely could result in a finding that the request for cancellation of removal had been abandoned.

September 22, 2009 came and went with the IJ not receiving any filing from El-Gazawy or his lawyer.[2] On the afternoon of Friday, October 2, El-Gazawy's lawyer

---

[1] The Oral Decision of the Immigration Judge, October 7, 2009, R. at 319-24, reveals that the case originally was assigned to Judge O. John Brahos. When Judge Brahos retired, the matter was reassigned to Judge Carlos Cuevas. The reassignment likely contributed to the schedule changes.

[2] Although the IJ and the government's attorney had not received any filings, El-Gazawy includes in the record a receipt demonstrating that he submitted his application for cancellation of removal to the DHS on September 14, 2009, within the deadline set by the IJ. R. at 26. We found no indication in the record that any of the supporting documentation was submitted before the deadline set by the IJ.

submitted the documents to the court along with a
motion for leave to file the documents *instanter*. On
Wednesday, October 7, 2009, El-Gazawy appeared for
his hearing, still represented by Abuzir. As the hearing
began, Abuzir handed the IJ a file-stamped copy of the
papers he had filed on Friday, five days earlier. This
was the first time the IJ saw the papers; counsel for
DHS had not yet received a copy of the filing. Noting
that the government had no opportunity to review the
documents before the hearing, the IJ asked counsel why
he had not filed the papers earlier. Abuzir responded
that he had "just received" documents supporting the
application prior to filing them.[3] He contended that the
late filing did not prejudice counsel for DHS because
this was a "straight-out cancellation." Counsel explained
he had been waiting for birth certificates, a lawful perma-
nent resident card for El-Gazawy's wife (he had married
in August), and evidence relating to El-Gazawy's ten
years of physical presence in the United States.

   The IJ noted that he had not received any indication
by September 22 that El-Gazawy wished to proceed with

---

[3] In his motion for leave to file the documents *instanter*, Abuzir
contended that he inadvertently had not marked the deadline
for the filing of documents in his calendar, and became aware
on October 1, when preparing for the hearing, that he had
not filed the documents. Thus, his oral explanation for the
late filing—that he had been waiting for and had only just
received the documents—conflicted with his written reason for
the late filing—that he had inadvertently failed to mark the
deadline on his calendar.

his claim, that his docket was full, and that the absence of any timely filing generally signaled that the alien was abandoning the claim or that there had been a breakdown in the relationship between the alien and his counsel. The IJ noted that approximately fourteen months had passed since the July 2008 hearing where the filing deadline had been set. The IJ cited regulations at 8 C.F.R. § 1003.47(c) that provided that a failure to file necessary documentation or comply with the deadline set by the IJ constitutes abandonment of the claim unless good cause is shown for the failure. Counsel noted that he was not requesting a continuance and that he was prepared to go forward with presenting his sole witness, El-Gazawy, to demonstrate the extreme and unusual hardship that would befall his wife and three U.S. citizen children if he were to be deported. The IJ concluded that no good cause had been demonstrated for the delay in filing the documents and he therefore deemed the claim for cancellation abandoned. The IJ granted voluntary departure, and after verifying that El-Gazawy spoke English, the IJ directly addressed him, detailing his appeal rights and the consequences of failing to depart voluntarily from the United States during the relevant time period. The IJ then returned to Abuzir the copy of the documents that Abuzir handed him at the beginning of the hearing, because Abuzir told the IJ they were his only copy and because the IJ did not wish to prejudice the government on appeal by including in the record documents that DHS counsel had not received.

On October 26, 2009, El-Gazawy, through Abuzir, timely appealed the IJ's oral decision to the BIA. In his appeal, he contended that the IJ erred when he deemed the application for cancellation of removal abandoned, and that the IJ abused his discretion in refusing to find good cause for the delay in filing the documents. On August 20, 2010, the BIA dismissed the appeal, noting that an IJ has broad discretion to conduct and control proceedings, and could properly dismiss as waived any applications or supporting papers not filed within the time limits established by the IJ. *See* 8 C.F.R. § 1003.31(c). The Board also commented that El-Gazawy had failed to submit any evidence during the pendency of the appeal that would establish *prima facie* eligibility for cancellation of removal. Finally, the Board declined to reinstate El-Gazawy's voluntary departure period because El-Gazawy had submitted no proof that he had paid the requisite $500 bond.

On September 20, 2010, still represented by attorney Abuzir, El-Gazawy filed a Motion to Reconsider and Remand (hereafter "First Motion to Reconsider") with the BIA. In this motion, he asserted that the BIA made two errors of fact in its August 20, 2010 decision. First, he contended that the BIA erred in its finding that the filing due date of September 22, 2009 was not in dispute. To the contrary, he maintained that the IJ's instructions regarding the cut-off date for filing documents were unclear, and no clear due date had been set for the application. He conceded that the IJ warned El-Gazawy that his application would be deemed abandoned if

he failed to supply his fingerprints by November 25, 2008, but he asserted that he complied with that deadline. In contrast, no similar warning was given for failing to timely file the application itself. As for the second factual error asserted, El-Gazawy challenged the BIA's finding that he had failed to submit evidence of his *prima facie* eligibility for cancellation of removal. He submitted the application and supporting documents on October 2, 2009, and they were file-stamped and made part of the record on that date.

On April 6, 2011, before the BIA ruled on this First Motion to Reconsider, El-Gazawy secured a new lawyer and filed a document titled "Respondent's Supplemental Motion to Reconsider, Reopen and Remand Based on *Matter of Lozada*" (hereafter "Motion to Reopen"). In the Motion to Reopen, El-Gazawy's new counsel argued that the original lawyer's failure to timely file the application for cancellation of removal constituted ineffective assistance of counsel. This ineffective assistance prejudiced El-Gazawy because he was not able to establish his eligibility for cancellation of removal. New counsel also contended that both El-Gazawy and the new counsel exercised due diligence in filing the Motion to Reopen and that equitable tolling should therefore apply to extend the usual ninety-day time limit for filing motions to reopen. In support of the argument for equitable tolling, El-Gazawy submitted an affidavit stating that Abuzir failed to file his application within the time set by the IJ, that on October 7, 2009, the IJ deemed therefore his application abandoned, and that he subsequently hired a new lawyer

to remedy the ineffective assistance of his previous counsel. El-Gazawy also averred that he had "given notice" to his prior attorney and had filed a claim with the Illinois Attorney Registration and Disciplinary Commission ("ARDC").

On May 11, 2011, the BIA denied both the First Motion to Reconsider and the Motion to Reopen. The BIA noted first that the Motion to Reopen was untimely. The final order had been entered by the Board on August 20, 2010, and the Motion to Reopen was not filed until April 6, 2011, well past the ninety-day time limit for filing motions to reopen. The Board concluded that El-Gazawy's Motion to Reopen did not qualify for equitable tolling because he failed to demonstrate due diligence in filing the motion. More than seven months passed between the final order and the filing of the Motion to Reopen, and yet El-Gazawy provided no evidence regarding the steps he took to protect his rights during those seven months. The BIA also found that El-Gazawy did not comply with the requirements of *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), because he did not inform his prior counsel of his intention to file the Motion to Reopen, and he did not provide his former counsel with an adequate opportunity to respond. The BIA noted that El-Gazawy filed his complaint with the ARDC on April 5, 2011, and filed the Motion to Reopen one day later, on April 6, 2011. The BIA also determined that El-Gazawy had not established prejudice for his ineffective assistance of counsel claim because he had not articulated how his wife and children would suffer exceptional and extremely unusual hardship upon his

removal from the United States. Finally, the BIA denied the First Motion to Reconsider because El-Gazawy simply raised arguments that had already been rejected and because his claims of factual error were not supported by the record.

El-Gazawy's new counsel then filed a timely "Respondent's Motion to Reconsider" (hereafter "Second Motion to Reconsider") on June 9, 2011. This time, he argued that the BIA erred in four ways. First, he contended that his Motion to Reopen was timely, or in the alternative, qualified for equitable tolling. Second, he claimed that he exercised due diligence in filing the Motion to Reopen considering the time it took to find new counsel, obtain the file from prior counsel, research the issues, and decide with the client an appropriate legal strategy. Third, El-Gazawy asserted that he was prejudiced because he was not able to establish his eligibility for cancellation of removal. And fourth, he argued that a claimant need not demonstrate that he would win his case in order to establish prejudice, but rather need only show that he was not afforded an opportunity to present his case because of his counsel's ineffective assistance.

The BIA denied the Second Motion to Reconsider on October 20, 2011, rejecting again the arguments that were duplicative of claims made in earlier motions. The BIA also rejected the new claim that the Motion to Reopen was timely because it was somehow "bootstrapped" to the earlier-filed First Motion to Reconsider, a claim lacking in any legal support. El-Gazawy now petitions for our review.

**II.**

In his petition for review, El-Gazawy contends that the BIA misconstrued the standards for analyzing a motion to reconsider, erroneously requiring him to raise new facts or new legal arguments. He also argues that the BIA erred in finding the Motion to Reopen untimely because it was filed while prior counsel's timely First Motion to Reconsider was pending. In the alternative, he maintains that the time for filing the Motion to Reopen should have been equitably tolled due to the ineffective assistance provided by his first lawyer.

**A.**

Because the filing of a motion to reconsider does not toll the time in which to seek review of the denial of a motion to reopen or dismissal of the underlying appeal, the only matter before us is the BIA's October 20, 2011 denial of El-Gazawy's Second Motion to Reconsider. *Stone v. INS*, 514 U.S. 386, 405 (1995) (the finality of a removal order is not affected by the subsequent filing of a motion to reconsider); *Muratoski v. Holder*, 622 F.3d 824, 829-30 (7th Cir. 2010) (a motion to reconsider does not toll the time to seek judicial review); *Rehman v. Gonzales*, 441 F.3d 506, 508 (7th Cir. 2006) (a motion asking the BIA to reconsider its decision does not toll the time to seek judicial review). Under the same authority, we may not review the Board's May 11, 2011 decision denying both the Motion to Reopen and the First Motion to Reconsider. *Asere v. Gonzales*, 439 F.3d 378, 380 (7th Cir. 2006) (the thirty-day limit is jurisdic-

tional and therefore may not be excused). We review the Board's denial of El-Gazawy's Second Motion to Reconsider for abuse of discretion. *Muratoski*, 622 F.3d 830; *Hernandez-Baena v. Gonzales*, 417 F.3d 720, 724 (7th Cir. 2005); *Ali v. Ashcroft*, 395 F.3d 722, 731 (7th Cir. 2005).

## B.

We begin with El-Gazawy's argument that the BIA erred in finding the Motion to Reopen untimely because it was filed while prior counsel's timely First Motion to Reconsider was pending. El-Gazawy bases this argument on the regulations governing the BIA, which provide:

> A motion to reopen a decision rendered by an Immigration Judge or Service officer that is pending when an appeal is filed, or that is filed while an appeal is pending before the Board, may be deemed a motion to remand for further proceedings before the Immigration Judge or the Service officer from whose decision the appeal was taken. Such motion may be consolidated with, and considered by the Board in connection with, the appeal to the Board.

8 C.F.R. § 1003.2(c)(4). The government responds first that El-Gazawy failed to exhaust this argument before the BIA, and that we should therefore decline to review it. *See* 8 U.S.C. § 1252(d)(1) (the "court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right"); *Ghaffar v. Mukasey*, 551 F.3d 651, 655 (7th Cir.

2008) ("[a]n alien ordered removed from this country is required to exhaust the administrative remedies available to him before seeking judicial review of the removal order"). *But see Arobelidze v. Holder,* 653 F.3d 513, 517 (7th Cir. 2011) (although the obligation to exhaust usually forecloses a petitioner from raising an issue in federal court that was not raised before the im‐migration tribunal, there are a number of exceptions to this non‐jurisdictional rule).

El‐Gazawy concedes that he failed to cite this specific provision of the regulations in his arguments before the BIA, but contends that he nonetheless adequately pre‐served the issue in his Second Motion to Reconsider. In the "Issues presented" section of the Second Motion, El‐Gazawy stated that the "supplemental motion based on ineffective assistance of counsel was timely. In the alter‐native, the motion qualifies for equitable tolling." In the "Analysis" section of the Second Motion, we find the entirety of the timeliness argument under the heading "Motion was Timely":

> 27. As supplemental motion, was bootstrapped to filing of Sept. 2010. No new time addition.

R. at 17, 21. The BIA characterized this as an argument "without citation or supporting authority . . . that the untimely motion to reopen was 'bootstrapped' to the prior motion to reconsider." BIA October 20, 2011 Order at 1. To the absence of citation or sup‐porting authority, we add that the argument also lacked grammatical structure, consisting only of two sentence fragments. The BIA rejected this largely unformed argu‐

ment because the "inclusion of the term 'supplemental' in the title of a motion [cannot] convert an untimely motion into a timely motion." BIA October 20, 2011 Order at 1. Although the BIA recognized that El-Gazawy was attempting to link the Motion to Reopen to the timely-filed First Motion to Reconsider, the BIA was not on notice that El-Gazawy was invoking 8 C.F.R. § 1003.2(c)(4) to do so. El-Gazawy contends that his failure to cite the particular regulation is not determinative because the BIA should be familiar with its own regulations. Although it is true that an agency should be familiar with its own regulations, a petitioner still must present an argument based on those regulations with enough clarity to put the agency on notice of the issue being decided. The exhaustion requirement "gives the Board an opportunity to apply its specialized knowledge and experience to the matter, it provides the petitioner with the relief requested in the first instance, and it provides us with reasoning to review." *Arobelidze*, 653 F.3d at 517. If the BIA had addressed this issue on its own, all of these concerns would have been satisfied, and we could treat the issue as exhausted and therefore reviewable. But the argument that El-Gazawy presented was simply too thin for the BIA to recognize it in the form the petitioner now urges us to consider. Because the issue that El-Gazawy now raises was not presented in a recognizable manner before the BIA, and because the BIA did not rule on this argument, we conclude that El-Gazawy failed to exhaust his administrative remedies.

**C.**

In any case, there is no error in the BIA's conclusion that the Motion to Reopen was untimely. A motion to reopen must be filed no later than ninety days after the date of entry of a final administrative order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i); *Sarmiento v. Holder*, 680 F.3d 799, 801 (7th Cir. 2012). The BIA has interpreted the date of final administrative order of removal as being the date that the BIA dismissed the appeal of an IJ's removal order, and not the date on which the BIA ruled on a motion to reconsider. *Sarmiento*, 680 F.3d at 802 (quoting 8 C.F.R. § 1003.2(c)(2)) (the Board's regulation corresponding to § 1229a(c)(7)(C)(i) explains that a motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened"). "To conclude otherwise would allow aliens to receive extra time to move to reopen their cases by the simple expedient of filing frivolous motions to reconsider." *Sarmiento*, 680 F.3d at 802. In this case, the final administrative decision was August 20, 2010, when the Board dismissed the appeal of the IJ's removal order. The Motion to Reopen was not filed until April 6, 2011, well after the ninety-day deadline.

El-Gazawy contends that his situation is distinguishable from *Sarmiento* because he argued before the BIA, and continues to maintain in his petition in this court, that he qualifies for equitable tolling due to the ineffective assistance of his first lawyer. *See Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988). The BIA rejected

this claim (twice) because El-Gazawy failed to demonstrate that he exercised due diligence in seeking relief and also failed to show that he suffered prejudice as a result of his lawyer's deficient performance.

In order to succeed on a claim for equitable tolling, a petitioner must demonstrate due diligence. *Johnson v. Gonzales*, 478 F.3d 795, 799 (7th Cir. 2007); *Patel v. Gonzales*, 442 F.3d 1011, 1016 (7th Cir. 2006). In assessing due diligence in the context of ineffective assistance of counsel, the claimant must demonstrate that he could not reasonably have been expected to file earlier. *Johnson*, 478 F.3d at 799; *Pervaiz v. Gonzales*, 405 F.3d 488, 490 (7th Cir. 2005). *See also Patel*, 442 F.3d at 1016 (equitable tolling requires a court to consider whether a reasonable person in the claimant's position would have been aware of the possibility that he had suffered an injury). In support of his claim of due diligence, El-Gazawy attached an affidavit to his Motion to Reopen ("Affidavit"). In the April 5, 2011 Affidavit, El-Gazawy simply asserted that (1) he hired Abuzir; (2) that Abuzir failed to meet the IJ's September 22, 2009 deadline for filing his application for cancellation of removal and supporting documentation; (3) that the IJ deemed his application abandoned and ordered him removed on October 7, 2009; (4) that he "subsequently" hired new lawyers to help him remedy the ineffectiveness of his prior counsel; and (5) that he had given notice to his prior attorney and filed a claim against the attorney with the ARDC. El-Gazawy did not state when he discovered that his lawyer was not performing competently or what steps he took in the interim to protect his interests. He offers no evidence

regarding what happened between the IJ's order of removal on October 7, 2009, and the April 6, 2011 filing of the Motion to Reopen. In light of his failure to offer any support for his claim that he acted diligently to preserve his rights during that time, we cannot say that the BIA abused its discretion in finding that El-Gazawy failed to meet the standard for due diligence.

Finally, even if El-Gazawy had exercised due diligence, he has never demonstrated that Abuzir's actions prejudiced him. El-Gazawy takes the position that he has adequately demonstrated prejudice by showing that he was denied his day in court, that he was denied an opportunity to present his evidence in support of his application for cancellation of removal. But to this day, El-Gazawy has not proffered or described any of the evidence that he was prevented from presenting. In order to qualify for cancellation of removal, he was required to demonstrate that his wife and children would have suffered "exceptional and extremely unusual hardship." *See* 8 U.S.C. § 1229b(b)(1)(D) ("The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien . . . establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence"). Without any evidence that he could have succeeded on the merits, his attorney's incompetence did not prejudice him. *See Rapheal v. Mukasey*, 533 F.3d 521, 533 (7th Cir.

2008) (prejudice means that the lack of a fair hearing actually had the potential for affecting the outcome of the proceedings); *Hamid v. Gonzales*, 417 F.3d 642, 646-47 (7th Cir. 2005) (applicant's failure to allege excluded testimony that would potentially affect outcome of hearing was fatal to due process claim). Because El-Gazawy has never articulated what evidence he would have presented to show that his removal would have caused exceptional and extremely unusual hardship for his wife and children, we cannot conclude that the BIA abused its discretion in denying his Second Motion to Reconsider.

## III.

We have reviewed El-Gazawy's remaining arguments and find no merit in them. For the reasons stated above, El-Gazawy's petition for review is

DENIED.